Good afternoon. Richard Rome appearing for Mr. Rojas. This is a case that comes here after a plea in an indictment that was 19 counts. The defendant pled guilty to 10 counts of wire fraud. He was ultimately sentenced to 37 months, ordered to make restitution in similar terms. The primary issue in this case is the amount of loss that was allegedly incurred during what was basically a real estate fraud case. The probation department determined it had recommended a loss of $2.7 million and a restitution of approximately $2.2 million. The defendant was given some credit with respect to the loss amount. And, of course, the loss amount is important because depending on what the loss is, the offense level changes with that. And... You're contesting this both for purposes of the sentencing guidelines and for purposes of restitution. That's correct. Are the standards the same? Well, there's probably a different way to compute it. I think when you take a restitution in a case like this, it will back out certain costs that might not be counted if you're figuring what a loss is. But the district court felt that those numbers were aligned. And so I would say that whatever the loss is was really what the restitution amount was. Now, what happened, there was test... There was basically, as the court might see, there was hundreds of documents, pages of documents and analysis submitted as to whether the loss was correct because these were foreclosures HUD would take back the properties. They had an arrangement with the county of San Bernardino. Could I take you back to the two different standards in the pre-sentence report? One for the guidelines loss calculation and the other for restitution. As I understood it, the restitution loss related to Section 3663A and was based on the value of the property when received by the victim, when returned to the victim. So that was the appraised value. Whereas for the guidelines loss, it was the sales price received by HUD by the victim. And the district court, in fact, used the restitution value for determining the guidelines loss or started with that, which would eliminate any of the concerns about the discounted price. Because he wasn't relying on a sales value, he was relying only on the appraised value. Why doesn't that, particularly when further discounted by the suggestion by Mr. Rojas, take care of any issue about collusive sales prices? Well, I think you're correct. The court did give Mr. Rojas some credit. Basically gave him $698,000 in change credit. What the court didn't do, it didn't give, in the court's mind, it obviously felt that there was some inflation of the loss here. And it made an effort to try and correct that, the situation that was presented in the pre-sentence report. And it gave, the amount that it gave was a figure that was contained in one of the exhibits that were submitted as part of the defense sentencing memorandum. Tom, the government has taken the view that your exhibits A, B, and C were simply alternate ways of arguing the same thing. The government takes the position, I don't know whether you agree with it or not, but for determining the total loss, you first look to the amount of the fraudulently obtained loans, the money that was not paid back. Use that as your base. And then you subtract from that, at least for purposes of determining offense level, you subtract from that the actual sale price of the surrendered collateral plus costs of foreclosure. And that gives you a figure. And the government contends that your objections to that figure, though stated in three separate exhibits, were essentially the same thing. That the item to be subtracted was deflated and should have been higher. In other words, they're accusing you of double counting. Do you disagree? Yeah, I disagree because I think that exhibit C didn't relate to all of the properties. A, B, and C were largely different properties. When you look at them carefully, there was a little overlap, actually. That's correct. But not much. That's absolutely correct. They were basically separate properties. There was a couple that overlapped. What the district court should have done, it gave them credit for what was contained on exhibit C, but it didn't give them credit for what was contained on exhibit A and B, which were primarily different properties. But since A and B, as I understand it, was aimed at the allegation that there were collusive discounts, since the district court used the restitution number, which was not based on sales, it was based on appraised value, I don't understand why there's a need to do any further discounting at all in order to avoid that concern. I think that the analysis that was done by the defense expert took that into consideration to an extent because he was working off of the pre-sentence report, or whoever did the analysis, either the defendant or the accountant. And I believe, I know some of the figures are a little bit difficult to follow, but if the court determined what the loss was, and then we have what in essence would be a further loss, then we should count that. Even if we were to take it like the court suggested, that there was already a discount in there, there should still be an additional discount for the difference then between what's on exhibit B and C and the restitution. And I think it would still take... But what you're really saying, I mean, if Judge Pakuda is right, and the number used was an appraised value, it had nothing to do with the actual sale price. Is that right? Is that correct? I think that that, yeah, there was... So in a way, you got a $690,000 windfall rather than anything else, because you got, he looked, even with regard to C, he was still looking at the sale price as opposed to the market price, right? And if the... I think C was done with comps rather than a sales price. But it was saying that the comparable value was to show that the discount was erroneous because comparable sales were higher. So it was another way of saying that the actual sales price was inaccurate. So the district court didn't use the sales price, it used the appraised value. Well, we're not... That would be one way to look at it. But I think that because the district court had all of that information in the pre-sentence report and still felt that however, whatever the evidence was that was presented by the defense, it was entitled to a further discount, however the court arrived at it. But you're saying that notwithstanding, even a further discount is required, and I guess I'm not understanding what the basis for that would be. I think the further discount would be the additional between... On A and B, there's a differential between what the defense expert put on and through the defense view, it felt that those prices were inflated even at the appraised value. And that therefore, there should have been some kind of an additional credit given. On the other issues, I'd be willing to submit on those. The fourth argument goes to the reasonableness of the sentence, which kind of, I think, dovetails into number one. But I have a minute, at least, if I could reserve it and see what the government says. I'm glad to reserve the time. Thank you. Go ahead. Thank you very much. Let me see if I can pose a question to get this organized. Your argument in the briefs, as I understood it, was that this was all redundant, that A, B, and C were redundant. It seems quite plain that they were not redundant. That is, that there were different properties that were being discussed. Is that not right?  It is correct. In reviewing this for oral argument, when I was assigned the case, it does appear that, as you correctly noted, while there are a few properties, I believe four to be specific, that appear on more than one list, the remainder appear to have been divided up. So there are… Right. So if we were to affirm, it would have to be on some theory, such as the one that Judge Acuda is positing. That is, that in effect, all of this doesn't matter because essentially the defendant got better than he deserved because he got an appraised value amount. I think that's correct, although I would also submit that it could be affirmed under an alternate theory, which is that obviously Exhibit C was taken into account by the district court when he subtracted that amount from the amount of restitution to arrive at the ultimate amount of restitution and amount of loss that he imposed in the case. With respect to Exhibit A, that purports to reflect discounts that were given to buyers like the County of San Bernardino. And as the HUD experts' declaration attests, those were in fact accounted for by not including those, by not counting those discounts against the defendant by using the appraised value. Right. Well, that's saying the same thing. You're saying that by using appraised value, you weren't feeding in the discounts. That would be true as to B. Now, why is C different? Is C different? C, I believe, is different for two reasons. First, Exhibit C appears to be the total number there, the $698,000. That appears to be the number that Judge Takasugi applied when subtracting from the amount of restitution originally proposed in the PSR to arrive at the $1.5 million and change. But how would you reconcile doing that and not doing A and B? Because Exhibit C, I think essentially Exhibit C was a windfall. Exhibit A and B, as I note, Exhibit A was already taken into account by relying on appraisal as opposed to sales prices plus the discounts. The discounts were not counted against the defendant in determining loss. With respect to Exhibit B, again, as we've explained, that had to do with that essentially held that HUD should be held responsible for the subsequent sales of properties that by subsequent buyers had, for example, been brought up to code, had had kitchens installed, had had various repairs made. It's not surprising that with the passage of time and with those repairs that they would fetch a higher price. And the question is what price did HUD receive? And there's simply no evidence, I think, that HUD engaged in any sort of collusive behavior in selling these. They simply were selling them. They were not required to pay. Could you use the microphone here? Go ahead. Accordingly, we've submitted that the valuation method used in Exhibit B simply isn't relevant. And there's no evidence. All right. But what I'm trying to understand is, but he did deduct Exhibit C. And the question is what would be the rationale for doing, for deducting Exhibit C but not A and B if he views the matter the way you're viewing it? I think what he was doing was taking the number. I mean, the district court didn't explain its reasoning in arriving at that. I understand that. But I want to know if there's a theory that would account for it. I think the theory that would account for it with respect to Exhibit C is simply that, hold this for me, for I think what the court was trying to do was to reach in light of what the defense counsel had said at sentencing, which is that it was essentially looking for a credit, the defendant was looking for a credit of $500,000. I think the district court took the $698,000 and applied that. Under the guidelines, the district court isn't required to make an exact approximation of loss, which can be difficult in these cases. It's simply required to make a reasonable estimate. Is it possible to read Exhibit C as essentially countering the appraisals because it was based on comparable properties, which is what appraisals presumably are based on, so that if this says that as for those properties, as it compared to comparable properties, in fact, the sale price was undervalued, one way of looking at that is to say the appraisal was wrong. Is that possible? Yes, that is possible. And I think by looking at what Exhibit C did, I mean, our contention both below and here is that those comps don't necessarily translate into a valid criticism of the specific appraisal. A lot of those comps depend on factors like the neighborhood. Yes, but that has something to do with the appraisal, doesn't it? Yes, it does. Our point would simply be that although it clearly was intended as a criticism of the appraisal, we wouldn't agree that it was a valid criticism. But you're not contesting it either. You're not contesting the $698,000 decrease. No, we did not appeal that. Our contention is, if anything, that makes the result even fairer for the defendant because he received a $698,000 essentially windfall in determining both restitution and the amount of loss. In fact, the district court noted when it was imposing restitution and the amount of loss that it was relying in part on Section 355.3a factors in reducing that amount and that this was a significant criminal enterprise. It went on for over two years. There were 62 properties involved, and the loans involved were over $5 million. Can I ask you about whether the district court complied with Rule 32 in making its ruling about whether Mr. Rojas was the organizer of the criminal activity? That was disputed by Mr. Rojas, but the district court didn't make any specific findings. All the district court said was, sorry, I find against you, in essence. Does that comply with the district court's requirements in Rule 32, which we've interpreted very strictly? I believe it does. As I understand it, the Rule 32 requires, and this is not an issue that was raised by the defendant on appeal, but all that it requires is that the district court either agree, adopt the objections, deny them, or state that it's not relying on them. In this case, the district court did deny them on the record, denied categorically the objections to both Rule and the offense and to the more-than-minimal planning enhancement. And all of our decisions seem to ignore the plain language of the Rule and look at an earlier version and say there has to be findings of fact and there has to be some sort of reasoned statement. Have you seen any cases which actually give effect to a simple denial, sorry, respectfully I disagree, is sufficient in that context? Your Honor, I have not, but as I would note, this issue was not raised by the defendant. And so if the court would like, I'd certainly be happy to submit a 28-J letter after argument with any cases that I could find addressing that issue either way, if the court would like. Otherwise, unfortunately, I'm not prepared to respond to that. If the court has no further questions, I'd simply note that in this case, as we noted in our papers, review is for clear error, and that we think in this case, given that the defendant already received more than the credit that he in fact asked for in front of the sentencing court, we think that the order in the sentence should be affirmed. It would have been helpful if the briefs had been straight about what these exhibits were about. It was more difficult to work one's way through than it needed to be. I apologize, Your Honor. As I was assigned this for oral argument, as I was reviewing it, that's when this became clear I was not in fact the person who ordered the briefs. But I will convey that. Thank you, Your Honor. Unless the court has any questions, I really don't have anything further to add. I think you addressed the issues. It's kind of difficult with all the numbers. But the only thing I would mention on the additional role in the offense in that, the judge did give it a very short shrift. It was almost an afterthought. And I think we did raise that up in our briefs. Okay. Thank you very much. Thank you, Your Honors. The case of United States v. Rojas is submitted. And then we'll go on to Boyd v. Salazar.
judges: Berzon, Ikuta, Singleton (Alaska)